# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| BF DANIELLE MICHELLE WHITE ) | |
| AND ROBERT B. WHITE, ) | |
|     Plaintiffs, ) | |
| ) | |
| V. ) | NO. 2:09-CV-211 |
| ) | |
| STATE OF TENNESSEE, *et al.*, ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion to dismiss filed by the defendant, the State of Tennessee, [Doc.13]. The State of Tennessee moves to dismiss an amended complaint of the plaintiff pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), on grounds that: (1) the Eleventh Amendment bars this complaint; (2) the state is not a "person" under § 1983; and (3) the doctrine of abstention prohibits federal court intervention in plaintiff Danielle White's ongoing state criminal proceedings. For the reasons which follow, the motion will be GRANTED.

**I.    Factual allegations**

The following factual allegations are gleaned, as best the Court is able, from the somewhat rambling, confusing and often incoherent complaint, [Doc. 2], and the first amended complaint, [Doc. 11]:

During the evening of July 27, 2009, the plaintiff, Robert B. White ("Robert"),

observed two trucks, occupied by four or five Hispanic workers, at the bottom of plaintiffs' driveway. The workers made their way through a barbed wire fence and onto the property of the plaintiffs. The workers had backpacks and were spraying what appeared to the plaintiffs to be pesticide in plaintiffs' pasture areas. The repeated requests by Robert to leave and to stop spraying were ignored by the workers.

Robert returned to the house and, at that point, the plaintiff, Danielle Michelle White ("Danielle"), telephoned the sheriff's department to report that these individuals were trespassing on plaintiffs' property and spraying pesticides on their organic farm. The Sheriff's Department dispatcher refused to dispatch an officer or to offer any assistance. A telephone call was then made to Greeneville Light and Power ("GL&P") which refused to confirm or deny that the workers were working for GL&P.

About fifteen minutes after the Hispanic workers left, four Greene County Sheriff's deputies arrived. One of the deputies stated that "someone had fired a shot" and he asked to speak to Danielle, who was inside the house. Danielle refused to leave the house unless the officers produced a warrant. When the officers surrounded Robert, Danielle "went up to the door to bring him back in the house." Danielle was grabbed by the arm by Officer Humphreys and another officer, handcuffed and placed in the deputy's car. The handcuffs were placed on so tight they made marks on Danielle's wrists and left bruises. The deputies then demanded that Robert produce identification for Danielle and, when he told them he didn't know where it was, they forced their way into the plaintiffs' house to look for the identification.

Without a warrant, Danielle was taken to the Greene County Jail where she was held in a "solitary cell" for more than three hours. The jail cell was "repulsive" and officers threatened to spray Danielle with pepper spray because she was banging on the door. Danielle was charged with two counts of aggravated assault for firing a .22 caliber rifle in the general direction of the workers and her "trial" was scheduled for August 28, 2009. The Sheriff's Department refused to press charges against the workers or their employer "for exposing [plaintiffs] to toxic chemicals and also our farm animals."

On August 3, 2009, Danielle went to the "Greeneville Police Station" and asked the Greene County Sheriff for an audio recording (apparently of the 911 recordings related to these incidents) and the sheriff played them for her on his computer. She was not given the requested audio recordings but was told to return the next day. When Danielle returned, she was informed that the computer system had been down and the information was unavailable.

## II. Nature of plaintiffs' claims

Plaintiffs seek both injunctive relief and compensatory damages in their complaint. Plaintiffs invoke the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1331 and apparently bring their complaint pursuant to 42 U.S.C. § 1983. The plaintiffs claim their constitutional rights pursuant to the Second, Sixth, Eighth and Thirteenth Amendments to the United States Constitution have been violated. More specifically, they claim violations of their right to bear arms, to be free from illegal searches and seizures, to "individual sovereignty," the prohibition against excessive bail, and against involuntary servitude. Plaintiffs' involuntary servitude claim is based on their allegation that the criminal laws of the

3

State of Tennessee "only apply to those persons who have allowed themselves to be considered property of the state by calling themselves citizens." Plaintiffs further allege that they are not required to obey state laws because they "never voluntarily relinquished [their] unalienable rights of sovereignty."

In the amended complaint, plaintiffs seek (1) dismissal of the charges against Danielle; (2) return of the firearm and bail monies; (3) a "restraining order" against the individual officers and the judge of the Greene County Sessions Court; (4) an investigation into the banking practices of Andrew Johnson Bank; (5) and an award of compensatory damages and attorney's fees and costs.

**III. Analysis and discussion**

As noted above, the State of Tennessee seeks dismissal of this action based on Eleventh Amendment immunity, because the state is not a "person" for the purposes of 42 U.S.C. § 1983 and under the abstention doctrine articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971). This Court agrees that plaintiffs' action against the State of Tennessee must be dismissed.

First, the Eleventh Amendment forbids this suit against the State of Tennessee. The Sixth Circuit has succinctly stated the law which applies to suits against a state, including suits for monetary liability under § 1983, in *Berndt v. State of Tennessee*, 796 F.2d 879 (6th Cir. 1986):

> . . . The Supreme Court has affirmed repeatedly that the Eleventh Amendment bars suits in federal court against a state unless the state expressly consents to suit. *See Atascadero State*

> *Hospital v. Scanlon*, 473 U.S. 234, 105 S. Ct. 3142, 3146, 87 L.Ed.2d 171 (1985); *Eddleman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1350-51, 39 L.Ed.2d 662 (1974); *Accord Marine Management, Inc. v. Commonwealth of Kentucky*, 723 F.2d 13, 14 (6th Cir. 1983). This sovereign immunity also extends to any suit brought by a private party where the payment of liability must be made from public funds in the state treasury, regardless of the actual party being sued. *Eddleman*, 415 U.S. at 663, 94 S. Ct. at 1355-56; *Hall v. Medical College of Ohio*, 742 F.2d 299, 301 (6th Cir. 1984), *cert. denied*, — U.S. ----, 105 S. Ct. 796, 83 L. Ed. 2d 789 (1985). The court also held in *Eddleman* and reaffirmed in subsequent opinions that Congress did not intend to abrogate a state's sovereign immunity in suits for monetary liability with the promulgation of § 1983. *Eddleman*, 415 U.S. at 677, 94 S.Ct. at 1362; *Quern v. Jordan*, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-47, 59 L.Ed.2d 358 (1979).

*Berndt*, 762 F.2d at 881.

There are only two exceptions to Eleventh Amendment immunity from suits for monetary damages against states: (1) Where Congress expressly abrogates the Eleventh Amendment in legislation; *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96 (1989), and (2) where a state expressly waives immunity from suit for money damages in federal court. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984). Neither of these exceptions apply here.

Second, § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Under the

plain language of the statute, therefore, in order to prevail on a civil rights claim under 42 U.S.C. § 1983, the Whites must establish that a "person" acting under the color of state law deprives them of rights secured by the Constitution and laws of the United States. *See Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). The State of Tennessee and its agencies are not "person[s]" for the purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Howlett v. Rose*, 496 U.S. 356, 365 (1990). Although not named as defendants specifically by plaintiffs, both the office of the District Attorney General, which is prosecuting the criminal charges against Danielle, and the Tennessee Department of Agriculture are entities of the State of Tennessee. *See* T.C.A. § 8-7-101, *et seq.*; T.C.A. § 4-3-101.[1]

Finally, the State correctly argues that the doctrine of abstention announced in *Younger v. Harris*, 401 U.S. 37 (1971) prohibits this Court from interfering with the ongoing state criminal prosecution of Danielle. The *Younger* doctrine counsels federal courts to abstain from enjoining certain pending state court criminal proceedings. *Id.* at 44. Federal courts properly invoke *Younger* abstention when a proceeding satisfies three criteria: "(1) the underlying proceedings constitute an ongoing state judicial proceeding; (2) the proceedings

---

[1] Although not named as defendants, plaintiffs' complaint makes various allegations against both the office of the district attorney general and the Tennessee Department of Agriculture. In paragraph 37 of the amended complaint, the plaintiffs claim that Danielle was arrested without a warrant, and the district attorney's office failed to arrest and prosecute those who came onto the plaintiffs' property and sprayed pesticides. In paragraph 38, the plaintiffs claim that the Tennessee Department of Agriculture has not taken water samples or shown appropriate concern for public safety despite the fact that the pesticides sprayed are dangerous and have refused to respond to inquiries concerning the death of certain farm animals on the plaintiffs' farm.

implicate important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the course of the underlying proceeding." *Danner v. Bd. of Prof'l. Resp*. 277 Fed. Appx. 575, 578 (6th Cir. 2008).

Here, the criminal prosecution of Danielle on charges of aggravated assault are ongoing state judicial proceedings for purposes of applying the *Younger* abstention doctrine. Ongoing state criminal proceedings are clearly proceedings which implicate an important state interest and to which the *Younger* doctrine applies. In fact, the *Younger* doctrine, in its original form, held that abstention was appropriate where federal jurisdiction had been invoked for the purpose of restraining an ongoing state criminal proceeding. *Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990). At the heart of *Younger* abstention is the notion of comity, that is, "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. The first (and second) elements for *Younger* abstention is satisfied if a state court proceeding was pending when the Whites filed their federal complaint. *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986).

The third criterion is also met in this case. In Tennessee, as the State argues, allegations of a violation of plaintiff's constitutional rights may be presented at any time during the state criminal proceedings. *Cooper v. Parrish*, 203 F.3d 937, 954-55 (6th Cir. 2000) (citing *Tennessee v. Draper*, 800 S.W.2d 489, 497 (Tenn. Crim. App. 1990) ("Our

courts have held that constitutional issues may be raised and considered at any stage of the proceedings.")).

Plaintiffs have filed a rather lengthy response to the State of Tennessee's motion to dismiss [Doc. 15 (consisting of a two page response, a seven page memorandum, and 25 pages of attachments)]. In the response, plaintiffs make several claims in opposition to the motion, including: (1) the Eleventh Amendment bars "citizens" from commencing lawsuits and plaintiffs are not claiming to be "citizens;" (2) the state employees "persons" that have been accused of violating plaintiffs' rights under 42 U.S.C. § 1983; (3) the state lacks jurisdiction to prosecute the "on-going state criminal proceedings;" and (4) the *Younger* doctrine is invalid. [Doc. 15, pp. 1-2]. In addition, in the memorandum attached to plaintiffs' response, they appear to raise several other claims in opposition as well: (1) that because the criminal prosecution is brought in the name of the "State of Tennessee," the State of Tennessee is therefore claiming to be a person; (2) the definition of "person" from the Oxford Encyclopedic Dictionary includes within its definition of "person" a group of people acting as a "single entity" and the State is "single entity;" (3) the *Pullman* abstention doctrine is invoked by plaintiffs; and (4) the Eleventh Amendment immunity has been determined to be invalid in "*Kimel, et al. v. FLC*.) (no citation given).

These claims of plaintiffs in opposition to the State's motion are utterly meritless. Their claims that they are not citizens and thus Eleventh Amendment immunity does not apply in this case as well as their argument that under some dictionary definition of person, a sovereign state might be included are frivolous on their face. Furthermore, plaintiffs

8

argument that the *Younger* doctrine of abstention is invalid is simply wrong as a matter of law. Likewise, plaintiffs' invocation of the *Pullman* abstention doctrine is misplaced. This doctrine of abstention "acknowledges that federal courts should avoid the unnecessary resolution of federal constitutional issues and that state courts provide the authoritative adjudication of questions of state law." *Brockett v. Spokane Arcades, Inc*., 472 U.S. 491, 508 (1985). *Younger* abstention, rather than *Pullman* abstention, is clearly appropriate here. Although in the ordinary *Pullman* case, the district court would retain jurisdiction pending an authoritative interpretation of Tennessee statutes, this is not a case where the state courts should first address interpretation of Tennessee statutes. Plaintiffs have made their claim here under federal constitutional provisions.

Finally, plaintiffs' citation to "*Kimel, et al v. FLC*" is almost incomprehensible. Plaintiffs provide no citation for the case they refer to and the Court is not familiar with such a case. Perhaps plaintiffs are referring to *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000). That case, dealing with the question of Eleventh Amendment immunity in an Age Discrimination and Employment Act ("ADEA") case, held that Congress exceeded its authority when it included in the ADEA a provision to abrogate states' immunity for cases under that Act. To the extent plaintiffs are relying on this case, the case has no application here.

For the reasons set forth herein, the motion of the State of Tennessee to dismiss, [Doc. 13], is **GRANTED** and plaintiffs' claims against the State of Tennessee are DISMISSED in their entirety. Also pending in this case is a motion for protective order and/or motion to stay

9

discovery filed on behalf of the State of Tennessee, [Doc. 33]. As a result of the Court's dismissal of the claims against the State of Tennessee, this motion has been rendered **MOOT** and will be **DENIED** as such.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE