UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BF DANIELLE MICHELLE WHITE )
AND ROBERT B. WHITE, )
    Plaintiffs, )
)
V. ) NO. 2:09-CV-211
)
GREENE COUNTY SHERIFF'S )
DEPARTMENT, OFFICERS CHUCK )
HUMPHREYS, JOHNNIE WADE AND )
SHERRY WOODBY, )
    Defendants. )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion of all remaining defendants[1] for summary judgment, [Doc. 87]. The motion for summary judgment is supported by a statement of undisputed material facts, a memorandum brief, declarations of Chuck Humphreys, Johnnie Wade, John Jones and excerpts from plaintiff Danielle White's criminal trial, [Docs. 87-1 through 5]. The plaintiffs have responded, [Doc. 95].[2] The matter is therefore ripe for disposition. For the reasons which follow, the defendants' motion for summary judgment will be GRANTED and plaintiffs' complaint will be DISMISSED.

**I.    Summary Judgment Standard**

The summary judgment standard is well settled. Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view

---

[1]  All other defendants in the case have been dismissed by prior orders of the Court.
[2]  The plaintiffs' response was docketed in the Court's CM/ECF system on June 30, 2014. The envelope in which it was mailed, however, shows a postmark or June 17, 2014.

1

the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial

is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary to the non-moving party. *Id.* at 248-52.

## II. Analysis

The Court will address the motion of each of the remaining defendants separately.

### A. Sherry Woodby

The plaintiffs' allegations against Woodby are contained in three sentences in the original complaint and in two paragraphs of the first amended complaint.[3]

> . . . I phoned the Sheriff's Office to report these people who obviously had no right to be spraying pesticides on our organic farm or to be trespassing on our property as I didn't want to go outside and expose myself to what I knew to be carcinogens. The sheriff dispatcher, refused to dispatch an officer or offer any assistance. It seemed as if the dispatcher could care less about our situation.

[Doc. 2 at 2].

> 2. It is wrongful for the Greene County Sheriff's Dispatch to refuse a phonecall for help. When Sheriff's dispatcher Sherry Woodby, as identified to plaintiff's [sic] as being on duty the night of July 27, 2009, refused to dispatch sheriffs to investigate a wrongful discharge of pesticides pursuant to the State of Tennessee's Title 62 Regulations and in violation of the Constitution along with illegal trespass and interference with agricultural practices, she violated the core of every persons right they have on their own property.
>
> 3. Pursuant to the Declaration of Independence, it is wrongful for a dispatcher to deny persons their right to life, liberty and the pursuit of happiness ….

[Doc. 11, ¶¶ 2, 3].

The undisputed facts in the case establish that Woodby is a dispatcher for the Greene County Sheriff's Department ("GCSD") and she was on duty on July 27, 2009. Woodby, however, was not the dispatcher who spoke to plaintiff[s] on that date, nor did she have any

---
[3] Sherry Woodby was not named as a defendant in plaintiffs' original complaint, [Doc. 2], but was added as a party in the amended complaint filed by plaintiffs, [Doc. 11].

3

involvement with the call. Even assuming that Woodby had been the dispatcher who spoke to plaintiff[s] on July 27, 2009, Woodby asserts that she is entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" *Elder v. Holloway*, 510 U.S. 510 (1994) (quoting *Harlow*, 457 U.S. at 806).

Unlike other affirmative defenses, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The qualified immunity analysis requires the Court to engage in a two-step analysis. *See Scott v. Harris*, 550 U.S. 372, 377 (2007). First, the Court considers whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 377 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the answer is yes, the Court then considers "whether the right was clearly established . . . in light of the specific context of the case." *Id*. (quoting *Saucier*, 533 U.S. at 201). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aye*, 319 F.3d 843, 848 (6th Cir. 2003) (internal citations omitted). While the sequence of this two-step inquiry is often appropriate, it is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate the officials

4

are not entitled to qualified immunity." *Silberstein v. City of Deyton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Stubenville City Schools*, 388 F.3d 967, 970 (6th Cir. 2004)).

It is undisputed that Woodby was not the dispatcher who spoke with plaintiff Danielle White ("White") on July 27, 2009, and she is entitled to summary judgment for that reason. There is no genuine issue as to whether ***this officer's conduct*** violated a constitutional right and the Court need not concern itself with the question of whether a dispatcher who refuses to "dispatch sheriffs" in response to a call reporting a possible violation of a law violates a person's constitutional right or whether such a right was clearly established. Plaintiffs' response simply asks the Court to deny the motion as to Woodby "until the Greene County Sheriff's Department can come forward with the name of the employee whom they claim answered the phone that night." The response ignores the fact that this case has been pending for almost five years and plaintiffs have had more than ample time to pursue the name through appropriate discovery, but have not done so. It also ignores the summary judgment burden on plaintiffs as the non-moving parties to come forward with evidence to show a genuine dispute of material fact. They have not done so.

During the testimony at White's criminal trial, a recording of her call to the sheriff's department on July 27, 2009 was played for the jury. In the call, White reported that individuals who claimed to be with the utility company were spraying chemicals on her organic farm. She stated that no one asked her permission and that the workers had crossed a fence line and were on her property. She said the workers had trimmed trees excessively earlier that year. She said she told the workers that she would call the police if they did not leave. The dispatcher told White that she would need to contact a lawyer or the workers' supervisor. *See State v. White*, 2013 WL 1788535 at *9 (Tenn. Crim. App. April 25, 2013). Although it is unnecessary for the

5

Court to consider the matter on the merits, the Court agrees that even if Woodby had been the dispatcher involved, there is no clearly established law, and plaintiffs have pointed to none, which would have placed a reasonable dispatcher on notice that advising someone that a dispute appeared to be a civil matter violated some clearly established right guaranteed under the Constitution. Plaintiffs only response here is to assert that the "defense has failed to read the Fourteenth Amendment," an assertion that falls far short of meeting plaintiffs' burden of identifying a clearly established constitutional right "in light of the specific context of the case." *Hearring v. Sliwowski*, 712 F.3d 275 (6th Cir. 2013).

### B. Johnnie Wade

Plaintiffs' allegations against Johnnie Wade are contained in one paragraph of the original complaint as follows:

> At the jail, I was put into a solitary cell for over 3 hours without being allowed a single phone call. They treated me worse than an animal and the cell was repulsive. After banging on the door, Sheriff Jonnie and two other officers (names unknown: one had blond hair and the other dark hair and hefty) came into the cell and threated to spray me with pepper spray. The abusive attitude of Greene County Sheriffs and police also should be investigated.

[Doc. 2 at 3].

On July 27, 2009, Johnnie Wade was employed as a correctional office at the Greene County Detention Center ("GCDC"), when Danielle White was brought to the GCDC for booking at 8:37 p.m. after her arrest on charges of aggravated assault. While waiting to be booked, White was placed in cell E-1. She was very upset, kicking, screaming, beating on the door. When Wade went back to check on her, White was hitting the door and screaming. Wade warned her to "stop the behavior or she would be pepper sprayed." She calmed down some and was not kicking the door but was still screaming. Pepper spray was never used. The booking process began at approximately 9:00 p.m. and lasted for about 45 minutes. At the end of the

6

booking process, White was allowed to make a telephone call. At approximately 11:25 p.m., after spending less than three hours in the GCDC, White bonded out of jail and was released.

Defendants broadly and liberally interpret plaintiffs' largely incoherent claims into three broad claims: (1) denial or delay in allowing White to make a telephone call; (2) placement in a solitary cell for approximately three hours; and (3) threat to use pepper spray. Officer Wade claims entitlement to qualified immunity as to all claims. The Court will address each one in turn.

### 1. Telephone call

This claim fails for the simple reason that there is no right for an arrested person to make an immediate phone call upon arrest. *Harrell v. Blount County*, 55 F.3d 1123, 1125 (6th Cir. 1995) ("The right to make a phone call immediately on arrest is not a recognized property right, nor is it a traditional liberty interest recognized by federal law.").[4] There is no constitutional violation here and Officer Wade is entitled to qualified immunity. Even if such a right existed, the delay in allowing White to make a phone call was relatively insignificant-less than two hours-and White was allowed to make a call at the conclusion of the booking process, i.e., around 9:45 p.m. Furthermore, the delay in starting the booking process was occasioned by White's disruptive behavior—screaming, kicking and beating on the door.

### 2. Solitary cell for three hours

Plaintiffs claim that White was kept in a solitary cell for three hours. The actual amount of time spent in the GCDC was a little less than three hours total and the booking process itself took about 45 minutes, meaning White spent only about two hours total in a cell. In addition, the delay in booking and her ultimate release from jail was occasioned, as noted above,

---

[4] Plaintiffs argue otherwise. Plaintiffs assert that the failure to allow an immediate phone call somehow interfered with Danielle White's "right to make bail and be released from jail." [Doc. 95 at ¶ 15]. Plaintiffs, however, cite no case law.

7

by her own disruptive behavior. In plaintiffs' response, they argue that White "did nothing to deserve being put in solitary confinement for three hours with no mattress or blanket, no toiletries, food or reading materials. The Supreme Court has held that the length of time an inmate is subjected to certain living conditions is relevant to determining whether the confinement continues constitutional standards.

The Constitution does not mandate comfortable prisons, and the lack of a mattress, toiletries, food or reading materials for a short less-than-three hour period, even if the cell is "repulsive," does not state a constitutional violation with respect to conditions of confinement. *See Hutto v. Finney*, 437 U.S. 678 (1978); *Rhodes v. Chapman*, 452 U.S. 337 (1981). Plaintiffs have failed to identify any constitutional violation even potentially implicated here, and plaintiffs have the burden, once a qualified immunity defense is raised, to demonstrate that the movant is not entitled to qualified immunity. *See Silverstein*, *supra*. *See also Barrett*, 388 F.3d at 970 (citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992)).

### 3. Threat to use pepper spray

The unwarranted use of pepper spray may violate an individual's clearly established constitutional rights. The Sixth Circuit has considered a number of factual scenarios in excessive force claims involving pepper spray over the years. The use of pepper spray may be excessive force where the plaintiff was not actively resisting arrest, had not been informed he was under arrest, or could no longer be perceived as a threat to the officers or others. *Grawey v. Drury*, 567 F.3d 302, 310-11 (6th Cir. 2009) (citing *Cabanis v. City of Riverside*, 231 Fed. App'x 407, 413 (6th Cir. 2007)). The use of pepper spray my also constitute excessive force where an individual is guilty of only a minor violation even if that individual was actively resisting arrest. *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002).

8

The use of pepper spray is also considered excessive where a detainee has surrendered, is secured, is not acting violently, and does not pose a threat to officers or third parties. *Cabanis*, 231 Fed. App'x at 413. Officers also use excessive force where they spray a suspect who has not been told they are under arrest and is not resisting. *Adkins v. Twp of Flint*, 94 Fed. App'x 342, 349 (6th Cir. 2004).

All of these cases, however, deal with the *use* of pepper spray. Here, White's allegation is that Officer Wade **threatened** the use of pepper spray if she did not calm down and stop her disruptive behavior but Wade never actually used the pepper spray. This Court has found no case in the Sixth Circuit or elsewhere which even suggests that the simple threat of the use of pepper spray is a constitutional violation under any circumstances. In White's case, given her screaming, kicking and beating on the door, her behavior was violent and posed a threat to the correctional officers in the detention center and the *use* of pepper spray likely would not have caused a constitutional violation. The Court, however, need not reach that issue.

Plaintiffs can show no clearly established statutory or constitutional right which was violated by Wade's threatened use of pepper spray, and he is entitled to qualified immunity on this claim as well.

### C. Chuck Humphreys

In the original complaint, plaintiffs made the following allegations related to Deputy Humphreys:

> . . . Deputy Humphreys stated that "someone had fired a shot" and he wanted to speak to Mrs. White. Mr. White came in to get me. At that point I told him that I would not go out unless they had a warrant which they did not. When my husband went out to tell them this, the officers surrounded him. I went up to the door to bring him back in the house. I specifically asked Officer Humphreys if he had a warrant and at that point, he grabbed me by the arm along with another officer and yanked me outside putting me in the sheriff car. He put the handcuffs on so tight they made marks on my wrists and left bruises for 2

9

weeks after. Then Officer Humphreys and two other officers surrounded Rob White and demanded my identification from him. When he told them he didn't know where it was, they forced their way into the house and demanded he look for it. Officer Humphreys then went into our bedroom.

Officer Humphreys and the Greene County Sheriffs violated Constitutional Right Number 4, the Freedom of the people from unreasonable searches and seizures. . . . Officer Humphreys did not have a warrant and the Affidavit was signed by him a day after the arrest and seizure. Hearsay of an officer is not probable cause as Officer Humphreys did not witness any crime and cannot sign an oath stating he did. In addition, no warrant has ever been issued or served in this case despite the taking of over $20,000 in bail moneys by the General Sessions Court.

[Doc. 2 at 2-3].

Plaintiffs' amended complaint makes the following allegation:

7. It is wrongful for Officers of Greene County including but not limited to Officer Humphreys to conduct a sham investigation, to make arrests and to search and seize their gun illegally without evidence other than hearsay. In addition, failing to obtain the correct documentation including a warrant and search warrant has violated my Constitutional Rights. Plaintiff also proclaims her right to a Habeaus [sic] Corpus proceeding.[5]

[Doc. 11 at ¶ 7].

Deputy Humphreys was dispatched to the Whites' residence after a report that someone had fired a shot. He was told by the victims when he arrived that a woman up the hill at White's address had shot at them. He went to the residence, met Mr. White, told him he was responding to the report of a shot being fired, and asked if there was a woman present. Mr. White responded, "she's in the house." Humphreys asked Mr. White to get her so police could speak to her. Mr. White went into the house for a few minutes and returned without her. Mr. White, at Humphreys's request, returned to the house a second time to request that she talk to the officers. He returned and Mrs. White opened the door about one and one-half feet and stood inside.

---

[5] White currently has a habeas petition pending in this Court.

Humphrey stood on the porch and talked to her. At this point, he did not know where the gun was.[6]

Danielle White was arrested as she tried to close the door and charged with two counts of aggravated assault as the result of the events of July 27, 2009. She was later convicted and her convictions have been upheld by the Tennessee appeals courts. Those convictions are now final. The Court agrees with the defendants that, to the extent that any of White's claims imply the invalidity of her criminal convictions, those claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) which prevents a plaintiff in a § 1983 action from pursuing a claim where it would necessarily imply the invalidity of a state court conviction.

Plaintiffs generally argue that *Heck* does not apply in this case because they are not seeking to invalidate White's conviction but rather are claiming excessive force was used in her arrest. This argument is rather disingenuous, however, because plaintiffs explicitly seek, in both the original complaint and in the amended complaint, relief in the form of "removal of charges obtained erroneously with regards to Danielle White" and in their response, [Doc. 95], argue that "[t]he case, *State v. White*, should be summarily dismissed and overturned." *Heck* clearly has application in this case.

All of plaintiffs' claims against Deputy Humphreys but two fall within the *Heck* doctrine. [See Doc. 85 at ¶¶ 5, 6]. White does assert that it was illegal for "Officer Humphreys to . . . seize [plaintiffs'] gun illegally without evidence other than hearsay." This claim is flawed because it is undisputed that Deputy Humphreys was not one of the officers who entered plaintiffs' residence to seize the firearm. Sergeant Davis testified at White's criminal trial that, when he arrived at the scene, he instructed Deputies Taylor and Graham to collect the firearm

---

[6] Most of these facts come from the Tennessee Court of Criminal Appeals' opinion in White's case.

and they did so. *See State of Tennessee v. White*, 2013 WL 1788535 at *20. Neither Sergeant Davis, nor Deputies Taylor and Graham are parties to this lawsuit.[7] Since it is undisputed that Humphreys was not actually involved in the seizure of the rifle, Deputy Humphreys is entitled to qualified immunity because plaintiffs have not met their burden of identifying conduct on Humphreys's part that violated a clearly established constitutional right.

Plaintiffs assert one other claim against Humphreys that has been overlooked by the defendants. In her original complaint, the plaintiffs made the allegation that Humphreys "put the handcuffs on so tight they made marks on [White's] wrists and left bruises for 2 weeks after." [Doc. 2 at 2]. The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that; (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *Morrison v. Board of Trustees of Green Township*, 583 F.3d 394, 401 (6th Cir. 2009) (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005)). Here, White has produced no evidence to create a genuine issue of material fact that she complained that the handcuffs were too tight or that Officer Humphreys ignored those complaints, nor has she even pled such allegations. For this reason, Deputy Humphreys is likewise entitled to qualified immunity on this claim.

**D.    Greene County Sheriff's Department**

As this Court has noted before, it is difficult to identify the precise claims pursued by the plaintiffs in their "rambling, confusing and often incoherent" complaint and amended

---

[7] Plaintiffs did name Graham, Taylor and Davis as defendants in her amended complaint. These defendants, however, were previously dismissed from this action because White did not serve them with process.

complaint.[8] Once again, the defendants have generously and liberally construed plaintiffs' filings and characterized plaintiffs' claims against Greene County Sheriff's Department/Greene County as follows: (1) Denial of opportunity to redress grievances; (2) sham investigation and denial of due process; (3) denial of access to public records; (4) warrants issued in violation of state and federal law; and (5) "gaslighting." The Court will address each of these below.

1. **GCSD is not a suable entity**.

As this Court has recognized many times, it is clearly established that the Greene County Sheriff's Department is not a suable entity within the meaning of 42 U.S.C. § 1983.[9] *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (A police department is not an entity which can be sued under § 1983.); *Smith v. Ritter* 2013 WL 3753984 (E.D. Tenn. July 15, 2013) (Collier, J.); *Ambrose v. Knight*, 2013 WL 3430840 (E.D. Tenn. July 8, 2013) (Mattice, J.); *Banner v. Hamblen County Sheriff's Department*, 2012 WL 1565385 (E.D. Tenn. April 30, 2012) (Jordan, J.); *Johnson v. Anderson*, 2008 WL 4093352 (E.D. Tenn. August 28, 2008) (Greer, J.); *Vega v. Harville*, 2008 WL 1840742 (E.D. Tenn. April 23, 2008) (Varlan, J.); *Maroney v. Ward*, 2008 WL 589532 (E.D. Tenn. February 22, 2008) (Phillips, J.).

Plaintiffs' complaint and amended complaint against GCSD are therefore DISMISSED. The Court will nevertheless briefly address these claims on the merits.

2. ***Heck v. Humphrey***

---

[8] In plaintiffs' response to the motion for summary judgment, plaintiffs respond to this statement as follows: "If neither the court, nor the Defense can seem to understand my English, then maybe this case would be best transferred to a place where the Constitution, the english language and women are still respected." That response does not change the fact that plaintiffs' pleadings are "rambling, confusing and often incoherent."

[9] In plaintiffs' response, they argue that, if the GCSD is not a suable entity, then the Court should "declare that neither [GCSD] nor the state of Tennessee ever had jurisdiction in this matter to arrest, detain and illegally search plaintiff's [sic] home." This argument has been consistently made by plaintiffs, i.e. that the State of Tennessee is an "artificially created entity" that has no jurisdiction over her and "does not exist in nature." This is a common allegation made by so-called "sovereign citizens" who generally believe they are not subject to state or federal law.

As set forth above, plaintiff Danielle White has been convicted of two counts of aggravated assault. These convictions have been affirmed on appeal and are final. To the extent her claims imply the invalidity of these convictions, they are barred by the *Heck* doctrine.

### 3. Denial of opportunity to redress grievances

In the amended complaint, plaintiffs allege:

> 5. It is wrongful for Greene County Sheriffs and other State entities to deny its residents a redress of grievances against harm done by toxic pesticides on their private property.
> 6. It is wrongful for Greene County Sheriffs to refuse to charge and property identify Hispanic workers that clearly had trespassed and harmed property and the waterways of people living in Greene County and failed to abide by Title 62 Regulations despite requests made by Plaintiffs. . . .

[Doc. 11, ¶¶ 5, 6].

The Whites have not met their burden of identifying a cognizable constitutional claim. Indeed, plaintiffs had a wide variety of civil and administrative remedies, both state and federal, through which to redress their grievances about the "harm done by toxic pesticides" as well as a trespass on their private property. They chose not to pursue any of those potential remedies.

To the extent the plaintiffs claim a violation of constitutional rights related to the sheriff's department's refusal to investigate, arrest or prosecute any person or corporation for the use of toxic pesticides, trespass, or any other potential criminal or regulatory violation, the claim fails. It is clearly established that "a private citizen has no Constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime." *Woods v. Miamisburg City Schools*, 254 F. Supp.2d 868, 873-74 (S.D. Ohio 2003) (citing *White v. City of Toledo*, 217 F. Supp.2d 838 (S.D. Ohio, 2002) (quoting *Doe v. Mayor and City Counsel of Pokomoke City*, 745 F. Supp. 1137, 1138 (D. Md. 1990); *Fulson v. City of Columbus*, 801 F. Supp. 1, 6 (S.D.

14

Ohio, 1992) ("A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public, and thus no one member of the public has a right to compel a public official to act.")).

### 4. Sham investigation and denial of due process

The plaintiffs' complaints related to this claim are set forth in paragraph 7 of their amended complaint set forth above in § II. C. In addition, in paragraph 8 of the amended complaint, the plaintiffs allege that "[i]t is wrongful for Greene County Sheriffs and Chief Jones to deny Danielle White due process of law."

As set forth above, plaintiffs have not stated a constitutional claim against Officer Humphreys. Even if they had, there is no *respondeat superior* liability under 42 U.S.C. § 1983 for the alleged wrongdoing of an officer. *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). This would be true as to conduct by Sergeant Davis and Deputies Taylor and Graham as well. Further, as also noted above, plaintiffs' claim of a sham investigation or denial of due process with respect to Danielle White's state court prosecution for aggravated assault is barred by the *Heck* doctrine.

### 5. Denial of access to public records

In the amended complaint, plaintiffs allege:

> 9. It is wrongful for Greene County Sheriffs and Chief Jones to deny Danielle White access to public records paid for by PUBLIC tax dollars including a taped recording of phonecalls made to Sheriffs dispatch on the night of July 27, 2009.

[Doc. 11, ¶ 9].

This allegation simply does not rise to the level of a constitutional violation. Furthermore, as defendants note, Tennessee state law provides her with a remedy if she was

15

denied access to a public record. *See* Tenn. Code Ann. § 10-7-505; *McLaughlin v. Weathers*, 170 F.3d 577, 581-82 (6th Cir. 1999).

### 6. Warrants violative of state and federal law

In the amended complaint, the plaintiffs allege:

> 11. It is wrongful for Greene County Sheriffs, Jimmy Cutshaw and Greene County Clerk Gail Jeffers, to issue warrants that go directly against Tennessee State law and also Constitutional law.

[Doc. 11, ¶ 11].

As defendants note, neither Jimmy Cutshaw nor Gail Jeffers are party defendants in this litigation. Moreover, any claim against these defendants would be barred by the *Heck* doctrine.

### 7. Claim of "Gaslighting"

In the amended complaint, the plaintiffs make the following allegations:

> 39. Whereas, the Greene County Sheriffs along with several "gang stalkers" have been gaslighting and harassing me and my family on a daily basis for several years now which we have come to believe is all related to this incident. This attack of us and our farm must be investigated. Plaintiff prays that Greene County Sheriffs Department and any other governmental agencies linked to harassment cease any and all contact with her and her family along with any harassment of them including but not limited to: hiring individuals to lurk around property, firing off gunshots repeatedly, killing, poisoning, stealing and maiming livestock, popping tires and smashing car glass prior to court dates, destroying fencing and property, running down gates and chains, dumping drugs or chemicals on our soil thereby contaminating the water supply, following her around in stores, store parking lots and on roads, using electronic devices to produce high frequency harassment, hacking into her computer and hard drive and the use of unmanned and manned airplanes to fly over property in an extremely low fashion designed to harass, intimidate and spy on her and her farm along with spraying barium and other poisons on property.
>
> . . . .

16

42. It is wrongful for Sheriffs and local and distant Masons including Master Mason Paul Pridgen of Helena Chemical Company to gaslight Mr. and Mrs. White in what looks like an attempt by Greene County to extort money from their bank account which happens to be located at the very same bank as Greeneville Light & Power and the Greene County Courts have. . . .

43. It is wrongful for Greeneville Sheriffs to illegally seize plaintiff's gun in order to render her helpless in the event of another attack on their property which will almost certainly be at the hands of the local occult of Masons, Greene County Sheriffs or hired drug addicts who are willing to do anything for money. . . .

[Doc. 11, ¶¶ 39, 41, 42, 43].

According to defendants, the term "gaslighting" refers to a form of mental abuse in which false information is presented with the intent of making a victim doubt her or his own memory, perception and sanity. Plaintiffs' complaint here can only be described as bizarre, paranoid, and irresponsible. Plaintiffs state absolutely no factual allegations to support their "belief" that GCSD was involved in any way with any "harassment" of plaintiffs or their family. The allegations fall far short of the requirement that a complaint assert sufficient facts, not conclusions or beliefs, from which the Court can conclude that the claim has "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). There is simply nothing in the complaint or the entire record which suggests that any officer of GCSD has engaged in such bizarre and criminal behavior.

### III. Conclusion

For the reasons set forth herein, the motion for summary judgment, [Doc.87], filed by Sherry Woodby, Johnnie Wade, Chuck Humphreys and Greene County Sheriff's Department is GRANTED and plaintiffs' complaint and amended complaint against these defendants is DISMISSED WITH PREJUDICE. The Court has already dismissed plaintiffs' claims against all other defendants, [See Docs. 43, 44, 45], and the Court will now enter judgment against plaintiffs

17

in favor of all defendants in the case. The Clerk is DIRECTED to TERMINATE AS MOOT defendants' motion to dismiss for failure to prosecute, [Doc. 77], and plaintiffs' motion, which is titled as a motion for summary judgment, [Doc. 86].[10]

So ordered.

ENTER:

                                                                           s/J. RONNIE GREER
                                                              UNITED STATES DISTRICT JUDGE

---

[10] Plaintiffs have filed a pleading, [Doc. 96], in which they say that their motion for summary judgment is "withdrawn" and that the case "cannot proceed until the Defendants answer Plaintiff's discovery requests." Plaintiffs' latest motion to compel, their fourth, was DENIED by the Magistrate Judge's order on June 2, 2014, [Doc. 94], and has not been objected to by plaintiffs. The Court is unaware of any outstanding discovery requests.